IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BILLY PAUL BIRDWELL, II,

    Petitioner,                    No. CIV S-10-2523 LKK EFB P

   vs.

M. MARTEL, Warden,

    Respondent.             FINDINGS AND RECOMMENDATIONS

_____/

Petitioner is a state prisoner without counsel seeking a writ of habeas corpus. *See* 28 U.S.C. § 2254. Respondent moves to dismiss the petition on the grounds that it fails to state cognizable ground for federal habeas relief. For the following reasons, the motion to dismiss must be granted.

**I.    Background**

Petitioner challenges a disciplinary conviction that was placed in his California Department of Corrections central file. *Id.* at 7. He alleges the following facts. He had a job as a law library clerk at his prison; as part of his job duties, he used a computer. *Id.* His supervisor, C. Hammond, had authorized petitioner to "practice on the computer" and "create limited religious documentation." *Id.* at 8. Correctional officer Delacruz, the security officer for the educational department, did not supervise petitioner, and never gave any work-related

1

instructions to petitioner. *Id.* at 8.

Petitioner filed a personnel complaint against a captain who had confiscated religious materials from him. *Id.* Two days after the captain was interviewed in connection with the complaint, an officer who worked directly under the captain ordered officer Delacruz to look at the computer petitioner was using. *Id.* The captain was also present during the inspection of the computer. *Id.*

Officer Delacruz gave petitioner a serious disciplinary report for having personal documents on the computer and removed him from his library job. *Id.* at 9. The charge was later reduced to a disciplinary infraction. *Id.* The disciplinary conviction, which was ostensibly based on Cal. Code Regs. tit. 15, § 3041(d), which states "Inmates assigned to educational, vocational, or other training programs must cooperate with the instructor or the person in charge, and must comply with instructions, and all requirements in the assigned activity," remains in petitioner's central file. *Id.* at 11.

Petitioner contends that section 3041(d) is inapplicable because Delacruz was not petitioner's supervisor, and petitioner's supervisor had allowed petitioner to engage in limited personal use of the computer. *Id.* at 10. Moreover, petitioner contends that there is no prison rule or regulation that prohibits having personal documents on the computer, and there was no such prohibition in his work contract. *Id.* at 10-11. Petitioner writes, "Prison officials in this case just arbitrarily made up a rule, and then negatively imposed it on petitioner, even in the face of facts that petitioner's supervisor authorized his conduct." Dckt. No. 13 at 2.

He contends that the disciplinary findings "potentially increased" the length of his sentence, as the Board of Parole Hearings often relies on disciplinary reports to deny parole. *Id.* Although he was removed from his prison job as a result of the disciplinary report, petitioner writes that he is "focused on the [expungement of the] disciplinary documentation . . . from his file, not his prison job or program," as he has now been moved to another prison and therefore cannot get his job back. *Id.* at 3.

## II. Respondent's Motion to Dismiss

Respondent moves to dismiss the petition pursuant to Rule 4 of the Rules Governing § 2254 Cases for failure to state a cognizable claim. This court has authority under Rule 4 to dismiss a petition if it "plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." As a corollary to that rule, the court may also consider a respondent's motion to dismiss, filed in lieu of an answer, on the same grounds. *See, e.g., O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss for failure to exhaust state remedies); *White v. Lewis*, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as the procedural vehicle to review a motion to dismiss for state procedural default). Respondent argues that petitioner's claim is not cognizable in a habeas petition because the petition does not challenge the fact or duration of petitioner's confinement; petitioner has not shown that he was deprived of a federally protected liberty interest; and petitioner has not raised a federal question. Dckt. No. 14 at 1.

The court first analyzes whether the petition challenges the fact or duration of petitioner's confinement, and is therefore cognizable in a federal habeas action. "Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . .; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Respondent's argument is a jurisdictional one – respondent claims that success on the petition will not impact petitioner's custody and thus the court is without power to hear the case under the habeas statute. *See Docken v. Chase,* 393 F.3d 1024, 1028-29 (9th Cir. 2004) (treating the issues of whether a claim that could potentially impact the duration of custody was cognizable or was within the court's federal habeas jurisdiction as interchangeable). The party seeking to invoke the

3

1 jurisdiction of a federal court bears the initial burden of pleading facts sufficient to establish
2 jurisdiction. *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178, 182 (1936); *Jackson v.*
3 *Cal. Dep't of Mental Health*, 399 F.3d 1069, 1074 (9th Cir. 2005); *United States v. Bustillos*, 31
4 F.3d 931, 933 (10th Cir. 1994). Thus, the court must determine whether petitioner has alleged
5 sufficient facts in the petition to show that the challenged actions impacted his custody in a
6 manner sufficient to invoke the court's jurisdiction under the habeas statute.

7 Petitioner has not alleged that he has lost time credits as a result of the disciplinary
8 conviction. Therefore, he cannot establish habeas jurisdiction on this basis. *See Preiser*, 411
9 U.S. at 487-88, 490 (holding that generally, a prisoner challenging a disciplinary action with an
10 attendant loss of time credits must pursue the challenge in a habeas petition, because a decision
11 in the case in the prisoner's favor would require restoration of the lost time credits and would
12 therefore accelerate the inmate's date of release, making the case the type of "core" habeas
13 challenge that must be pursued by habeas petition).

14 However, petitioner does argue that the Parole Board may find petitioner unsuitable for
15 parole because of the disciplinary conviction. *See* Dckt. No. 13 at 2-3. Petitioner supports his
16 argument by attaching transcripts of his previous parole board hearings, at which the parole
17 board discussed his other disciplinary convictions and concluded that he was not suitable for
18 parole. *See* Dckt. No. 1 at 21-27.

19 Courts within the Ninth Circuit have not uniformly decided whether habeas jurisdiction
20 exists when a petitioner challenges prison discipline that will potentially or even likely, but not
21 definitely, impact the duration of his confinement. *Compare, e.g., Bostic v. Carlson*, 884 F.2d
22 1267, 1269 (9th Cir. 1989) ("Habeas corpus jurisdiction . . . exists when a petitioner seeks
23 expungement of a disciplinary finding from his record if expungement is likely to accelerate the
24 prisoner's eligibility for parole."); *Hardney v. Carey*, No. CIV S-06-0300 LKK EFB P, 2011
25 U.S. Dist. LEXIS 35603, at *18-22 (E.D. Cal. Mar. 31, 2011) (recommending that the district
26 court find that a challenge to a disciplinary conviction carrying no credit loss was cognizable in

habeas because of its likely impact on parole eligibility, adopted in full by district court order dated June 6, 2011); *Johnson v. Swarthout*, No. CIV S-10-1568 KJM DAD P, 2011 U.S. Dist. LEXIS 43798, at \*4-8 (E.D. Cal. Apr. 22, 2011) (same); and *Silva v. Cal. Dep't of Corr.*, No. CIV S-03-1508 DFL GGH P, 2005 U.S. Dist. LEXIS 32046, at \*2-3 (E.D. Cal. Dec. 9, 2005) (same, adopted in full by 2006 U.S. Dist. LEXIS 3661 (E.D. Cal. Jan. 31, 2006)) with *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003) (stating that "habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence."); *Everett v. Yates*, No.1:11-CV-00150 AWI GSA HC, 2011 U.S. Dist. LEXIS 23224, at \*2-5 (E.D. Cal. Mar. 8, 2011) (recommending the dismissal of a habeas petition challenging a disciplinary conviction with no attendant credit loss, because the potential impact of the conviction on the petitioner's parole prospects was "entirely speculative"); and *Perrotte v. Salazar*, No. ED CV 06-00539-JOHN (VBK), 2010 U.S. Dist. LEXIS 140385, at \*9-16 (C.D. Cal. Nov. 8, 2010) (same, adopted in full by 2011 U.S. Dist. LEXIS 6606 (C.D. Cal. Jan 24, 2011)).  A brief discussion of the apparent source of disagreement and the various approaches courts in this circuit have taken when addressing habeas petitions challenging prison disciplinary decisions that will impact the duration of confinement only to the extent that they may impact the petitioners' parole eligibility follows.

      Three Ninth Circuit cases are central to the controversy: *Bostic v. Carlson*, 884 F.2d 1267 (9th Cir. 1989), *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003), and *Docken v. Chase*, 393 F.3d 1024 (9th Cir. 2004).  In *Bostic*, the court reviewed district court dismissals of ten separate habeas petitions filed by the same petitioner, challenging nine prison disciplinary actions taken against him.  884 F.2d at 1269.  Prison officials had assessed a forfeiture of good-time credits for some of the infractions, but the remainder did not carry of loss of time credits – only a term of segregated housing.  *Id.* at 1269.  In each of the petitions, the petitioner sought expungement of the infractions from his disciplinary record.  *Id.*  The court "assume[d]" that habeas jurisdiction existed over all the petitions, even those challenging discipline with no attendant credit loss,

5

stating:

> Habeas corpus jurisdiction is available under 28 U.S.C. § 2241 for a prisoner's claim that he has been denied good time credits without due process of law. [citations] Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restriction of his liberty, such as disciplinary segregation, without due process of law.[1] [citations] Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole. [*McCollum v. Miller*, 695 F.2d 1044, 1047 (7th Cir. 1982)].

*Id.* at 1269 (emphasis added). The court did not elaborate on when expungement would be "likely to accelerate" parole-eligibility.[2]

////

---

[1] This statement has been undercut by the Supreme Court's indication in *Muhammad* that claims that do not in any way implicate the fact or duration of confinement are not cognizable under the federal habeas statutes. *See* 540 U.S. at 754-55 (stating that the plaintiff, who brought a retaliation claim against a prison official, had raised no claim on which habeas relief could have been granted on any recognized theory); *see also Crawford*, 599 F.2d at 891 ("[T]he writ of habeas corpus is limited to attacks upon the legality or duration of confinement."). Further, placement in administrative segregation does not give rise to an actionable claim under the Due Process Clause unless the segregated housing presents a "dramatic departure from the basic conditions of [the inmate's] sentence." *Sandin v. Conner*, 515 U.S. 472, 485 (1995); *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

[2] *Bostic* spoke of "eligibility" for parole. In California, release on parole is a two-step process – first, the prisoner must become "eligible" to be *considered* for parole (sometimes referred to simply as "eligibility") and, second, the prisoner must be found "eligible" to be *released* on parole (sometimes referred to simply as "suitability"). *See Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997) (highlighting this distinction for purposes of § 1983 challenge to Hawaii's Sex Offender Treatment Program). It is unclear whether the *Bostic* panel's jurisdictional pronouncement was limited to claims likely to accelerate eligibility for consideration or covered both those claims and claims likely to accelerate eligibility for release, as both concepts can be covered broadly by the term "eligibility" and courts often do not distinguish between the two steps. *See* The Free Merriam-Webster Dictionary entry for "eligible," http://www.merriam-webster.com/dictionary/eligible (last checked July 5, 2011) (defining "eligible" as "qualified to participate or to be chosen" and "worthy of being chosen"). The undersigned assumes, absent definitive indication to the contrary, that the court intended that habeas jurisdiction exists both when success on the claim is likely to accelerate the date on which the petitioner becomes eligible for parole consideration as well as when success on the claim is likely to accelerate the date on which the petitioner will ultimately be found suitable for release on parole. This assumption is consistent with the underlying purpose of the writ of habeas corpus, which is concerned with the petitioner's ultimate release. So long as success on the claim is likely to accelerate release under *Bostic*, the court sees no reason to distinguish between "eligibility" and "suitability."

The court revisited *Bostic*'s statements on habeas jurisdiction in *Ramirez*. 334 F.3d at 858-59. In *Ramirez*, a prisoner brought a civil rights action under § 1983 rather than a habeas petition to challenge the procedures used in imposing disciplinary sanctions of ten days of disciplinary detention, 60 days loss of privileges (but no loss of time credits), and a referral to administrative segregation. *Id.* at 852-53. He sought expungement of the disciplinary record from his file and an injunction prohibiting the state from considering it "when they fix plaintiff's terms and decide whether plaintiff should be released on parole." *Id.* at 859 n.6. The district court dismissed the case, finding it barred by *Heck*'s favorable termination rule after determining that success in the case would necessarily imply that the disciplinary finding was invalid. *Id.* at 852; *see supra* n.2.

The Court of Appeals reversed, holding that the favorable termination rule does not apply to prison disciplinary sanctions that do not necessarily affect the fact or length of a prisoner's confinement. *Id.* at 854-58; *see supra* n.2. The court rejected the state's *Bostic*-based argument that the plaintiff's claim that his disciplinary hearing violated due process was "logically inseparable from an attack on the outcome of that hearing, and that a judgment in his favor would necessarily imply the invalidity of his disciplinary conviction." *Id.* at 859. The court reasoned that the favorable termination rule applies only if success in the § 1983 action would necessarily imply the invalidity of a disciplinary finding and necessitate a reduction in the plaintiff's length of confinement. *Id.* The state had failed to show that expungement of the disciplinary finding would necessarily accelerate the plaintiff's release, because the parole board could still deny parole on the basis of other factors. *Id.* ("As Ramirez's suit does not threaten to advance his parole date, his challenge to his disciplinary hearing is properly brought under § 1983.").

////

////

////

In the course of its analysis, the court discussed *Bostic* in some detail:

> *Bostic* does not hold that habeas corpus jurisdiction is always available to seek the expungement of a prison disciplinary record. Instead, a writ of habeas corpus is proper only where expungement is "likely to accelerate the prisoner's eligibility for parole." *Bostic*, 884 F.2d at 1269 (emphasis added). . . . *Bostic* thus holds that the likelihood of the effect on the overall length of the prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus."

*Id.* at 858. From this, the court made the following leap, assuming that the courts' jurisdiction over habeas petitions and their jurisdiction over § 1983 actions are mutually exclusive: "[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." *Id.* at 859 (emphasis added). For ease of discussion, the undersigned will refer to this quote as the "mutual exclusivity rule." This language has created uncertainty, because challenges to prison conditions that will necessarily shorten the prisoner's sentence fall squarely within the "core" of habeas identified in *Preiser*, and *Ramirez* language indicates that only "core" habeas cases can be brought in federal habeas petitions. (Remember that *Preiser* simply held that "core" cases had to be brought in habeas but did not hold that habeas was limited to such cases.) However, *Bostic* – quoted with apparent approval by the *Ramirez* panel – squarely found habeas jurisdiction to exist in a non-"core" situation, where success would not necessarily spell earlier release, but was merely likely to accelerate parole-eligibility. Thus, *Ramirez*'s mutual exclusivity rule appears inconsistent both with the opinion's prior reliance on *Bostic* for the proposition that "the likelihood of the effect on the overall length of the prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus" and with *Bostic* itself.

One year after *Ramirez*, the court again visited the intersection of habeas and § 1983 in *Docken*. 393 F.3d at 1026-31. In *Docken*, as in *Bostic*, the court reviewed the dismissal of a habeas petition for want of jurisdiction. *Id.* at 1025, 1026. Unlike *Bostic*, the petitioner in *Docken* did not challenge a prison disciplinary finding, but rather the timing of his parole-eligibility reviews. *Id.* at 1025-26. The district court had concluded that the claim could

only be brought under § 1983 rather than habeas, because the plaintiff's success in the case would not "entitle" him to release, just an earlier eligibility review. *Id.*

In reversing that conclusion, the Court of Appeals discussed at length U.S. Supreme Court and Ninth Circuit precedent. The first conclusion the court drew from that precedent was that, "although Supreme Court law makes clear that § 1983 is not available where a prisoner's claim 'necessarily' implicates the validity or duration of confinement, it does not set out any mirror-image limitation on habeas jurisdiction." *Id.* at 1028. The court, citing *Bostic*, noted that its own precedent held that habeas jurisdiction was available in some non-"core" circumstances. *See id.* ( "In [*Bostic*], for example, we held that 'habeas corpus jurisdiction . . . exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole.'").

> Importantly, in speaking of claims only "likely to accelerate" eligibility for parole, *Bostic* defined a class of suits outside the "core" habeas claims identified in *Preiser*. Success on the merits in such cases would not "necessarily"implicate the fact or duration of confinement. Instead, such claims have, at best, only a possible relationship to the duration of a prisoner's confinement, as eligibility for parole is distinct from entitlement for parole.

*Id.* at 1028-29. Thus, the court recognized that, under *Bostic*, habeas jurisdiction was proper even where success on the claim would not necessarily shorten the plaintiff's sentence – a view of habeas jurisdiction squarely at odds with the mutual exclusivity rule announced in *Ramirez*. In fact, the *Docken* court went even further than *Bostic*, finding cognizable not only those challenges that, if successful, were "likely to accelerate" release, but also those that, if successful, "could potentially affect the duration of . . . confinement." *Id.* at 1031.

Unfortunately, the *Docken* panel did not expressly resolve the inconsistency between *Bostic* and *Ramirez*. It did attempt to distinguish *Ramirez*'s mutual exclusivity rule in a footnote by stating that it was limited to the circumstances presented in that case, where the prisoner challenged "internal disciplinary procedures" and consequent administrative segregation that did not "deal with the fact or duration of his confinement." *Id.* at 1030 n.4. A close reading of

1  *Ramirez* reveals that the case cannot be distinguished from *Bostic* on those grounds, however.
2  As in *Ramirez*, the petitioner in *Bostic* challenged at least one prison disciplinary action that
3  resulted in administrative segregation but no loss of time credits. Importantly, in both cases, the
4  prisoners sought expungement of a disciplinary finding from their records, and the prisoner in
5  *Ramirez* specifically argued that the challenged disciplinary findings would have an adverse
6  impact on his parole eligibility. *Ramirez*, 334 F.3d at 859 n.6; *Bostic*, 884 F.2d at 1269. Thus,
7  both cases "deal[t] with the fact or duration of confinement" in the same manner.

8        The court follows the approach of *Bostic* and *Docken* rather than *Ramirez*'s mutual
9  exclusivity rule. Some district courts have reasoned that *Ramirez*'s mutual exclusivity rule was
10 dictum and thus not binding. *E.g.*, *Foster v. Washington-Adduci*, No. CV 09-07987-PSG (DTB),
11 2010 U.S. Dist. LEXIS 41578, at *12 (C.D. Cal. Mar. 24, 2010); *Hickey v. Adler*, No.
12 1:08-cv-00826-JMD-HC, 2009 U.S. Dist. LEXIS 67064, at *6 n.4 (E.D. Cal. July 27, 2009);
13 *Dutra v. Cal. Dep't of Corr. & Rehab.*, No. C 06-0323 MHP, 2007 U.S. Dist. LEXIS 82377, at
14 *16-17 (N.D. Cal. Nov. 6, 2007); *Drake v. Felker*, No. 2:07-cv-00577 (JKS), 2007 WL 4404432,
15 at *2 (E.D. Cal. Dec. 13, 2007). The undersigned agrees. The mutual exclusivity rule was not
16 essential to the holding in *Ramirez*, which held simply that *Heck*'s favorable termination rule
17 does not apply to § 1983 cases where success in the action would not necessitate earlier release.
18 That holding is not contrary to, and may coexist beside, *Docken*'s conclusion that § 1983 and
19 habeas are not mutually exclusive but instead may both be available to prisoners in some
20 instances, specifically in those challenges that implicate the duration of confinement but would
21 not necessarily, if successful, result in speedier release.[3]
22 ////
23

---

24     [3] Additionally, even if *Ramirez*'s mutual exclusivity pronouncement was essential to its
25 holding, it is difficult to reconcile with *Bostic*'s earlier ruling to the contrary. *See Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (per curiam) (noting that rulings by three-judge panels are "law of the circuit," and are binding on subsequent three-judge panels).
26 Thus, an en banc panel would have to reconcile to apparent conflict.

Accordingly, the court finds that, under *Bostic* and *Docken*, habeas jurisdiction exists over the instant petition, because expungement of the disciplinary action challenged by petitioner could potentially accelerate petitioner's release.

### III. Mootness

Although petitioner's claims are within the jurisdiction of the habeas statute for the reasons just discussed, the court must also examine whether that petitioner's claims are nevertheless moot and are thus outside the court's jurisdiction under Article III of the U.S. Constitution. Under Article III, § 2, a federal court's jurisdiction is limited to those cases which present "cases-or-controversies." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In habeas actions, the case-or-controversy requirement mandates that a petitioner must have suffered, or be threatened with, an actual injury traceable to the respondent and redressable by issuance of the writ. *See id.* Respondent does not argue that petitioner's claims are moot, but federal courts "have an independent duty to consider" mootness sua sponte. *Demery v. Arpaio*, 378 F.3d 1020, 1025 (9th Cir. 2004). Like jurisdiction under the habeas statute, it is petitioner's obligation to allege facts sufficient to show that his claim is within the court's power under Article III. *Jackson*, 399 F.3d at 1074.

In general, a habeas petition challenging a prison disciplinary action no longer presents such a case or controversy, and therefore becomes moot, when the punishment for the action has been withdrawn or completed at the time of the petition. *See Wilson v. Terhune*, 319 F.3d 477, 479, 481-82 (9th Cir. 2003). Where the petitioner can show that so-called "collateral consequences" flow from the disciplinary action (i.e., circumstances beyond the punishment imposed that constitute an actual injury), however, the case remains justiciable. *Id.* at 479-80; *see Spencer*, 523 U.S. at 14-16. This court must therefore determine whether petitioner has alleged facts showing that the disciplinary sanctions against him have not yet been completed or that collateral consequences of the disciplinary action cause his case to remain live.

////

Although petitioner was removed from his prison job as a result of the disciplinary finding and was never reinstated, because he has been transferred to another prison and thus would not have that job in any case, the loss of his prison job does not constitute collateral consequences of the disciplinary action.

Therefore, petitioner's only argument that collateral consequences of the disciplinary conviction exist is the Parole Board's potential reliance on the disciplinary action to deny him parole. A brief summary of the relevant authorities regarding whether potential impact on parole-eligibility constitutes a collateral consequence follows. In *Spencer v. Kemna*, the Supreme Court considered whether an order revoking parole carried collateral consequences. 523 U.S. at 14-16. The petitioner in *Spencer* argued that the order could be used against him in a future parole proceeding. *Id.* at 14. The Court found this possibility insufficient to be considered a collateral consequence, however, because, the potential use of the parole revocation order in a future parole suitability hearing was merely "a possibility rather than a certainty or even a probability." *Id.* This was so, the court concluded, because under state law, the order would be only one factor among many to be considered by the parole authority in a future parole proceeding, and the parole authority had almost unlimited discretion to determine suitability. *Id.*

In *Wilson v. Terhune*, the petitioner argued that a prison disciplinary finding (based on an escape attempt) would adversely affect his future parole prospects. 319 F.3d at 482. The Ninth Circuit similarly concluded that such a possibility did not constitute a collateral consequence, because "the decision to grant parole is discretionary" and the disciplinary finding would be only one factor among many considered by the BPH. *Id.*; *see also Carranza v. Gomez*, 221 Fed. Appx. 582, 583 (9th Cir. 2007) (characterizing *Wilson* as holding that "impaired parole prospects do not constitute collateral consequences."). The court also noted that the BPH would likely consider the underlying conduct, which the petitioner did not deny, rather than the disciplinary finding itself, so expunging the disciplinary conviction would not improve his parole prospects. *Wilson*, 319 F.3d at 482.

Here, like in *Wilson*, there is no dispute as to the facts underlying the disciplinary conviction. Petitioner freely admits that he saved documents on the law library computer. He argues that the disciplinary conviction is improper only because there was no rule, regulation, contract or instruction prohibiting him from doing so. It is likely that the Parole Board will consider the culpability of the underlying conduct rather than solely the fact of the disciplinary conviction itself.

In addition, the transcript of petitioner's previous parole board hearing shows that petitioner has received other disciplinary violations in the past. Petitioner has not shown that this particular disciplinary conviction is likely to adversely affect his parole prospects, considering that he does not have an unblemished disciplinary record. For example, he has not submitted evidence that the Parole Board would grant him parole at a subsequent hearing if and only if he was disciplinary-free during that time period.

Given the particular facts of this case, the court finds that petitioner has not shown that collateral consequences of his disciplinary conviction exist. Because the petition must be dismissed as moot, the court does not address respondent's additional arguments.

**IV.  Conclusion**

Accordingly, it is hereby RECOMMENDED that respondent's motion to dismiss be granted, and the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections, if any, petitioner may address whether a certificate of appealability should issue in the event he

files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: March 7, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE