UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BILLY PAUL BIRDWELL, II,

          Petitioner,

     v.

M. MARTEL, Warden,

          Respondent.

No.  2:10-cv-2523-TLN-EFB P

FINDINGS AND RECOMMENDATIONS

      Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a prison disciplinary conviction that resulted from a rules violation report issued against him in 2010, while he was imprisoned at Mule Creek State Prison.  Petitioner claims that his disciplinary conviction violates his Fourteenth Amendment right to due process and that the disciplinary proceedings against him were instituted in retaliation for a grievance he filed against a correctional officer.  Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

**I.     Background**

      On February 26, 2010, Correctional Officer (C/O) R. Delacruz wrote a rules violations report (RVR) charging petitioner with "creation of unauthorized documents on inmate

/////

/////

1

computer/misuse [of] state materials," in violation of Cal. Code Regs. tit. 15, § 3041(d).[1]   ECF

No. 1 at 17.   C/O Delacruz alleged that:

> On 2/24/10 at approximately 13:30 hours, while performing my duties as 'C' Education Officer, I was instructed by Facility "C" Program Sergeant E. Rodriguez to search Inmate BIRDWELL assigned work station area for inappropriate use of computer and state materials.   At 14:25 hours I released all inmates from 'C' Library area and conducted the search with the assistance of the Librarian C. Hammond.   The computer was found to have unauthorized documents created by Inmate BIRDWELL utilizing his assigned inmate computer.   As a result of my discovery his assigned computer was impounded by Mule Creek State Prison's Information Systems Department.   A CDC-128B has also been submitted for Inmate BIRDWELL to be removed from his job assignment and computer clearance reviewed due to his unauthorized and inappropriate computer usage.

*Id.*

The disciplinary hearing on the rules violation report was held on March 4, 2010.  *Id.* at 18.  Petitioner appeared at the hearing and stated he was willing to proceed.  *Id.*  All reports used as evidence against petitioner were disclosed to him at least 24 hours in advance of the hearing. *Id.*  Those reports included CDC forms CDC-115 and 115A, "additional evidence" recovered from petitioner's computer on March 1, 2010, and a "copy of EPD standards MC-15."  *Id.* Petitioner did not meet the criteria for assignment of a staff assistant or investigative employee, so neither was assigned.  *Id.*

At the disciplinary hearing, petitioner explained the charge against him to the senior hearing officer (SHO) "in his own words."  *Id.*  By this means, "the SHO was satisfied that Inmate BIRDWELL was able to articulate and understand the nature of the proceeding."  *Id.* Petitioner pled not guilty to the charge, stating: "I had permission from our Supervisor to type the Memo and familiarize myself using the computer."  *Id.*  Of the seven documents considered as evidence at the disciplinary hearing, two were authorized by the prison librarian, three were admittedly petitioner's, and two of them petitioner "did not remember."  *Id.*

/////

---

[1]   Regulation 3041(d) provides: "Inmates assigned to educational, vocational, or other training programs must cooperate with the instructor or the person in charge, and must comply with instructions, and all requirements for participation in the assigned activity."

Petitioner requested and received permission to call several witnesses at the hearing.  *Id.*
Inmate Lafavour stated: "C. Hammond gave permission to use the computer for moderate
personal use."  *Id.*  Correctional Officer Delacruz was asked who was present when he collected
the evidence from petitioner's computer.  *Id.*  He responded, "The Librarian C. Hammond,
Captain Kaplan and myself."  *Id.* At 20.  Librarian C. Hammond responded to two questions by
speaker phone, as follows:

> Q#1.   Did you give permission (BIRDWELL) to type memo correspondence to Captain Kaplan?
>
> A#1.  "Yes, the letter is about his religion."
>
> Q#2.  Did you allow BIRDWELL to use the computer for personal use?
>
> A#2.   "I told him they can practice using the computer to familiarize its systems."

*Id.*

Petitioner was found guilty of a violation of Cal. Code Regs. tit. 15, § 3041(d) based on
the allegations by Officer Delacruz contained in the RVR; petitioner's "partial admission of
guilt," i.e., that three of the documents admitted into evidence were his; and the testimony of
librarian Hammonds at the hearing.  *Id.*  However, the SHO elected to reduce the charge to a
disciplinary infraction (custodial counseling chrono) because "moderate [sic] personal use had
been authorized mitigating the written report."  *Id.  See also* Cal. Code Regs. tit. 15, § 3312(a)(2).
Because of this decision by the SHO, petitioner's punishment was reduced to a verbal reprimand.
This infraction became part of petitioner's record, which is subject to parole board review.

Petitioner challenged his disciplinary conviction in a petition for writ of habeas corpus
filed in the California Supreme Court.  ECF No. 22 (Answer) at 8-48.  The Supreme Court
summarily denied that petition.  *Id.* at 50.

## II.    Analysis

### A.     Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a
state court can be granted only for violations of the Constitution or laws of the United States.  28

U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).  Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision.  *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

4

court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable." *Williams*, 529 U.S. at 412; *accord Schriro v. Landrigan*, 550 U.S. 465, 473

(2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

*Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

must show that the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

     If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

(en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

de novo the constitutional issues raised.").

     In reviewing a federal habeas petition, the federal court looks to the last reasoned state

court decision as the basis for the state court judgment.  *Stanley*, 633 F.3d at 859; *Robinson v.*

*Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or

substantially incorporates the reasoning from a previous state court decision, this court may

consider both decisions to ascertain the reasoning of the last decision.  *Edwards v. Lamarque*, 475

F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state

court and the state court has denied relief, it may be presumed that the state court adjudicated the

claim on the merits in the absence of any indication or state-law procedural principles to the

contrary." *Richter*, 131 S. Ct. at 784-85.  This presumption may be overcome by a showing

"there is reason to think some other explanation for the state court's decision is more likely."  *Id.*

1   at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).  Similarly, when a state court

2   decision on a petitioner's claims rejects some claims but does not expressly address a federal

3   claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was

4   adjudicated on the merits.  *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013).

5         Where the state court reaches a decision on the merits but provides no reasoning to

6   support its conclusion, a federal habeas court independently reviews the record to determine

7   whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

8   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

9   review of the constitutional issue, but rather, the only method by which we can determine whether

10  a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no

11  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

12  reasonable basis for the state court to deny relief."  *Richter*, 131 S. Ct. at 784.

13        When it is clear, however, that a state court has not reached the merits of a petitioner's

14  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

15  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

16  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

17        Here, the California Supreme Court, which was the only state court to consider

18  petitioner's challenge to his disciplinary conviction, summarily denied relief.  A summary denial

19  is presumed to be a denial on the merits of the petitioner's claims.  *Stancle v. Clay*, 692 F.3d 948,

20  957 & n. 3 (9th Cir. 2012) (The presumption that the denial is based on the merits, rather than on

21  procedural grounds, may be overcome if it is not "plausible."), *cert. denied*, 133 S. Ct. 1465

22  (2013).  While the state court's summary denial affords the federal court little to analyze in

23  deciphering what formed the basis for the ruling, the federal court must review the state court

24  record to determine whether there was any "reasonable basis for the state court to deny relief."

25  *Richter*, 131 S. Ct. at 784.  This court "must determine what arguments or theories . . . could have

26  supported, the state court's decision; and then it must ask whether it is possible fairminded jurists

27  could disagree that those arguments or theories are inconsistent with the holding in a prior

28  decision of [the Supreme] Court."  *Id.* at 786.  The petitioner bears "the burden to demonstrate

1    that 'there was no reasonable basis for the state court to deny relief.'"  *Walker v. Martel*, 709 F.3d

2    925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

3        **B.        Background Facts/Petitioner's Allegations**

4        Petitioner challenges his disciplinary conviction on the grounds that he was not aware, or

5    did not have "notice," that his conduct was prohibited by any prison rule or regulation and, in any

6    event, his actions were authorized by his employment supervisor.  He also claims that his

7    disciplinary proceedings were instituted in retaliation for a grievance he filed against a prison

8    captain.  He makes the following allegations.

9        Petitioner had a job as a law library clerk at Mule Creek State Prison.  ECF No. 1 at 7.  As

10    part of his job duties, he used a computer.  *Id.*  His supervisor, C. Hammond, had authorized him

11    to "practice on the computer" and "create limited religious documentation."  *Id.* at 8.  C/O

12    Delacruz, who authored the RVR against petitioner, was a security officer for the education

13    department.  He did not supervise petitioner and never gave petitioner any work-related

14    instructions.  *Id.*

15        Petitioner filed a personnel complaint against Captain M. Kaplan for "religious

16    discrimination" because Kaplan had confiscated religious materials from him.  *Id.*  Two days after

17    Kaplan was interviewed in connection with this complaint, an officer who worked directly under

18    Kaplan ordered officer Delacruz to inspect the computer petitioner was using.  *Id.*  Kaplan was

19    present during the inspection of petitioner's computer.  *Id.*  Shortly thereafter, Officer Delacruz

20    gave petitioner the rules violation report for having personal documents on his computer, in

21    violation of Cal. Code Regs. tit. 15, § 3041(d), and removed petitioner from his library job.  *Id.*

22        Petitioner claims that Captain Kaplan retaliated against him for filing the prison grievance

23    by ordering the search of his computer, being present at the search, and causing a disciplinary

24    action to be filed against him.  *Id.* at 10.  He alleges that proof of "this conspiracy" is that Kaplan

25    was present at the search of petitioner's computer two days after he was interviewed by the

26    Associate Warden on petitioner's complaint.  *Id.*  Petitioner also states that prison rules forbid

27    anyone but an Information Security Officer from performing a computer security audit.  *Id.*

28    /////

1    Petitioner claims that the RVR should not have been issued by C/O Delacruz because

2    Delacruz was not petitioner's employment supervisor.  *Id.* at 9, 11.  He contends that C/O

3    Delacruz filed the rules violation report based on the orders of Captain Kaplan, "to aide [sic] in

4    the conspiracy of retaliation" for petitioner's grievance against Kaplan.

5    Petitioner states that C. Hammonds, his employment supervisor, had allowed him to

6    engage in limited personal use of the computer.  *Id.*  Moreover, petitioner contends his

7    disciplinary charge was based on "work related conduct not prohibited by any rule or circulated

8    regulation nor noticed on petitioner's work contract.[2]  *Id.*  He states that he was not given a copy

9    of all prison regulations, as required by statute.  Petitioner claims, "Prison officials in this case

10   just arbitrarily made up a rule, and then negatively imposed it on petitioner, even in the face of

11   facts that petitioner's supervisor authorized his conduct."  *Id.* at 10-11; ECF No. 13 at 2.

12   Petitioner's allegations give rise to several federal constitutional claims, as discussed

13   below.

14   **C.    Analysis**

15   **1.    State Law Claims**

16   As set forth above, petitioner claims, among other things, that prison authorities failed to

17   give him a copy of prison regulations and that the RVR was invalid because it was filed by C/O

18   Delacroix, who was not his work supervisor.  These claims involve alleged violations of state

19   laws or prison regulations, which are not cognizable in this federal habeas proceeding.  The

20   federal writ is not available for alleged error in the application of state law, and habeas corpus

21   cannot be utilized in federal court to try state issues de novo.  Rather, petitioner must show that

22   the decision of the state courts somehow "violated the Constitution, laws, or treaties of the United

23   States."  *Estelle*, 502 U.S. at 68.  *See also Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009)

24   ("[W]e have repeatedly held that 'it is not the province of a federal habeas court to reexamine

25   state-court determinations on state-law questions.");  *Rivera v. Illinois*, 556 U.S. 148, 158 (2009)

26   ───────────────

27   [2]  Neither party has filed the confiscated documents with this court.  Nor has Respondent
     explained what those documents consist of, or (surprisingly) in what particulars they exceed the
28   scope of the authorization petitioner was given by his work supervisor to create documents the
     purpose of familiarizing himself with the computer.

1  ("[A] mere error of state law . . . is not a denial of due process") (quoting *Engle v. Isaac*, 456 U.S.

2  107, 121, n.21 (1982) and *Estelle*, 502 U.S. at 67, 72-73); *Bradshaw v. Richey*, 546 U.S. 74, 76

3  (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in federal

4  habeas"); *Little v. Crawford*, 449 F.3d 1075, 1083 (9th Cir. 2006) (quoting *Estelle*, 502 U.S. at

5  68).  A habeas petitioner may not "transform a state-law issue into a federal one" merely by

6  asserting a violation of the federal constitution.  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir.

7  1997).  In light of these authorities, petitioner is not entitled to federal habeas relief on any claims

8  that prison authorities violated prison regulations or state law in the prosecution of his

9  disciplinary action.

10                    **2.      Procedural Due Process**

11         Petitioner claims that his prison disciplinary conviction violates his Fourteenth

12  Amendment right to due process.  It is well established that inmates subjected to disciplinary

13  action are entitled to certain procedural protections under the Due Process Clause but are not

14  entitled to the full panoply of rights afforded to criminal defendants.  *Wolff v. McDonnell*, 418

15  U.S. 539, 556 (1974); *see also Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985).  The Ninth

16  Circuit has observed that prison disciplinary proceedings command the least amount of due

17  process along the prosecution continuum.  *United States v. Segal*, 549 F.2d 1293, 1296-99 (9th

18  Cir. 1977).

19         An inmate is entitled to advance written notice of the charge against him as well as a

20  written statement of the evidence relied upon by prison officials and the reasons for any

21  disciplinary action taken.  *See Wolff*, 418 U.S. at 563.  An inmate also has a right to a hearing at

22  which he may "call witnesses and present documentary evidence in his defense when permitting

23  him to do so will not be unduly hazardous to institutional safety or correctional goals."  *Id.* at 566.

24  *See also Ponte v. Real*, 471 U.S. 491, 495 (1985).  The disciplinary hearing must be conducted by

25  a person or body that is "sufficiently impartial to satisfy the Due Process Clause."  *Wolff*, 418

26  U.S. at 571.

27         The decision rendered on a disciplinary charge must be supported by "some evidence" in

28  the record.  *Hill*, 472 U.S. at 455.  A finding of guilt on a prison disciplinary charge cannot be

"without support" or "arbitrary." *Id.* at 457.  The "some evidence" standard is "minimally

stringent," and a decision must be upheld if there is any reliable evidence in the record that could

support the conclusion reached by the fact finder.  *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir.

1994) (citing *Hill*, 472 U.S. at 455-56 and *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)).

*See also Burnsworth v. Gunderson*, 179 F.3d 771, 773 (9th Cir. 1990); *Zimmerlee v. Keeney*, 831

F.2d 183, 186 (9th Cir. 1987).  Determining whether this standard is satisfied in a particular case

does not require examination of the entire record, independent assessment of the credibility of

witnesses, or the weighing of evidence.  *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir.

1986), *abrogated in part on other grounds* by *Sandin v. Connor*, 515 U.S. 472 (1995).  Indeed, in

examining the record, a court is not to make its own assessment of the credibility of witnesses or

re-weigh the evidence.  *Hill*, 472 U.S. at 455.  The question is whether there is any reliable

evidence in the record that could support the decision reached.  *Toussaint*, 801 F.2d at 1105.

Where a protected liberty interest exists, the requirements imposed by the Due Process

Clause are "dependent upon the particular situation being examined."  *Hewitt v. Helms*, 459 U.S.

460, 472 (1983).  The process due is such procedural protection as may be "necessary to ensure

that the decision . . . is neither arbitrary nor erroneous."  *Washington v. Harper*, 494 U.S. 210,

228 (1990).  In identifying the safeguards required in the context of disciplinary proceedings,

courts must remember "the legitimate institutional needs of assuring the safety of inmates and

prisoners" and avoid "burdensome administrative requirements that might be susceptible to

manipulation."  *Hill*, 472 U.S. at 454-55.  The requirements of due process in the

prison context involve a balancing of inmate rights and institutional security concerns, with a

recognition that broad discretion must be accorded to prison officials.  *Wolff*, 418 U.S. at 560-63.

In this case, the requirements of procedural due process were satisfied with regard to

petitioner's disciplinary proceedings.  Petitioner was given advance written notice of the

disciplinary charge brought against him by virtue of the issuance of the RVR at least 24 hours

prior to the disciplinary hearing.  Therein, petitioner was advised that he was being charged with

creation of unauthorized documents on his prison issued computer and misuse of his computer for

this purpose, in violation of § 3041(d).  These allegations were narrow enough to give petitioner

1   the "chance to marshall the facts in his defense," which is the basis for the notice requirement.

2   *Wolff*, 418 U.S. at 564.  Indeed, petitioner presented a defense to the charges against him by

3   calling witnesses at the disciplinary hearing whose testimony was specifically directed to whether

4   petitioner had created unauthorized documents on his computer in violation of specific directions

5   given him by his work supervisor with regard to permissible use of that computer.  This

6   demonstrates that petitioner was aware of the exact nature of the charges against him.

7         Petitioner was also given a written statement of the evidence relied upon by prison

8   officials and the reasons for the disciplinary action taken against him.  He was allowed to call the

9   witnesses he requested.

10        Although it is not entirely clear from a reading of petitioner's allegations, he may be

11  claiming that the adjudicator at his disciplinary hearing was biased or impartial because of the

12  situation involving petitioner's grievance against Captain Kaplan.  It is true that "[a] fair trial in a

13  fair tribunal is a basic requirement of due process."  *In re Murchison*, 349 U.S. 133, 136 (1955).

14  A judge "may not adopt procedures that impair a defendant's right to due process or his other

15  rights guaranteed by the constitution."  *United States v. Thompson*, 827 F.2d 1254, 1258 (9th Cir.

16  1987).  Among the factors indicating possible bias is where the adjudicator "has been the target of

17  personal abuse or criticism from the party before him."  *Withrow v. Larkin*,  421 U.S. 35, 47

18  (1975).  However, in order to prevail on a claim of judicial bias, a petitioner must overcome a

19  "strong presumption that a judge is not biased or prejudiced."  *Sivak v. Hardison*, 658 F.3d 898,

20  924 (9th Cir. 2011) (quoting *Rhoades v. Henry*, 598 F.3d 511, 519 (9th Cir. 2010)).  These

21  principles apply to administrative agencies as well as to courts.  *Withrow*,  421 U.S.at 35.

22        There is no competent evidence before this court that the SHO at petitioner's disciplinary

23  hearing was biased.  Indeed, the SHO reduced the charges after the conclusion of the disciplinary

24  hearing based on evidence that petitioner was given permission by his work supervisor to engage

25  in "moderate" personal use of the computer.  In particular, there is no evidence, aside from

26  petitioner's unsupported assertions, that the SHO or anyone else at petitioner's disciplinary

27  hearing was involved in a conspiracy to retaliate against petitioner for filing a grievance against

28  Captain Kaplan.  The mere fact that petitioner filed a grievance against Kaplan and was

11

1    subsequently the subject of disciplinary proceedings, without more, does not establish bias,

2    particularly where Kaplan was not involved in the adjudication of the disciplinary charge against

3    petitioner.  Certainly, the California Supreme Court's rejection of this argument is not

4    unreasonable given the facts before the court.

5          Finally, although it is a close question given respondent's failure to submit or even

6    describe the nature of the "unauthorized documents", the court must conclude that there was

7    "some evidence" supporting petitioner's disciplinary conviction for violating Cal. Code Regs. tit.

8    15, § 3041(d), as reduced by the SHO to a disciplinary infraction.  Specifically, the RVR authored

9    by C/O Delacruz alleged that Delacruz found "unauthorized documents" on petitioner's work

10   computer.  The evidence introduced at the disciplinary hearing included several documents

11   confiscated from petitioner's computer.  Of the seven items of evidence admitted at the hearing,

12   only two were designated as "authorized" by the librarian.  Of the other five items, petitioner

13   admitted that three were his.  An inmate testified that petitioner was given permission to use the

14   computer, but for "moderate personal use."  C. Hammond, petitioner's supervisor, testified that

15   she gave petitioner permission to type a memo to Captain Kaplan.  However, more than one

16   document was confiscated from petitioner's computer.  Although petitioner stated that he had

17   received permission to "familiarize [himself] using the computer," he also testified that he had

18   permission from C. Hammond to type "the Memo."  ECF No. 1 at 18.

19         This evidence, although certainly not overwhelming, constituted "some evidence" and

20   was therefore sufficient to support petitioner's disciplinary conviction.  The California Supreme

21   Court's determination that the disciplinary finding of guilt was supported by sufficient evidence

22   was not unreasonable in light of the minimally stringent nature of that standard of proof.

23         In light of controlling Supreme Court precedent, petitioner was afforded all the procedural

24   process that was due him under the federal Constitution in the context of prison disciplinary

25   proceedings.  *Hill*, 472 U.S. at 455; *Powell v. Gomez*, 33 F.3d 39, 40.  Accordingly, he is not

26   entitled to federal habeas relief with respect to his due process claim.

27   /////

28   /////

### 3. Notice that his Conduct Was Unlawful

Petitioner also argues that he was not aware, or did not have "notice," that creating the documents that were confiscated from his computer violated prison regulations. He argues that his conduct was not "defined or prohibited by any specific rule or circulated regulation." ECF No. 1 at 7, 9. By these allegations, petitioner is claiming, in essence, that Cal. Code Regs. tit. 15, § 3041(d) is unduly vague and therefore failed to provide him with notice that his conduct was sanctionable.

"Due process requires that a criminal statute 'give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.'" *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964) and *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001)). "It is a basic principle of due process that a law is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "Under the "void-for-vagueness" doctrine, due process requires enactments to be written with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Castro v. Terhune*, 712 F.3d 1304, 1307 (9th Cir. 2013) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). A statute or regulation is void for vagueness if it fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108. *See also Skilling v. United States*, ___U.S.___, ___, 130 S. Ct. 2896, 2904 (2010); *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989). The void-for-vagueness doctrine only requires that the rule give "fair warning" of prohibited conduct. *Colten v. Kentucky*, 407 U.S. 104, 110 (1972).

The Court of Appeals for the Third Circuit has held that, in the context of prison regulations, "[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions." *Meyers v. Aldredge*, 492 F.2d 296, 310 (3d Cir.1974). Thus, "vagueness principles must be applied in light of the legitimate needs of prison administration." *Id.* at 311. Because "legalistic wrangling"

over the meaning of prison rules "may visibly undermine the [prison] administration's position of total authority," federal courts have deferred to the interpretation of those rules by prison authorities "unless fair notice was clearly lacking." *Hadden v. Howard*, 713 F.2d 1003, 1008 (3d Cir. 1983) (quoting *Meyers*, 492 F.2d at 311). Further, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *United States v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). *See also Hess v. Bd. Of Parole*, 514 F.3d 909, 914 (9th Cir. 2008) ("the Due Process Clause does not require the same precision in the drafting of parole release statutes as is required in the drafting of penal laws"). The Ninth Circuit has assumed without deciding that the void-for-vagueness doctrine applies to prison administrative regulations. *Castro v. Terhune*, 712 F.3d 1304, 1310 (2013).

Here, petitioner was charged with a violation of § 3041(d) in that he created unauthorized documents on his computer in violation of instructions given him by supervisor with regard to proper use of that computer. The language of the regulation, as narrowed by the instructions given to petitioner by C. Hammond, gave him fair warning that his conduct in going beyond his supervisor's authorization was sanctionable. As noted above, petitioner had sufficient understanding of the charges against him, and the conduct required of him under the regulation, that he was above to present a narrowly tailored and relevant defense. Petitioner does not claim he was unaware that he was required to cooperate with the person in charge at his workplace, or that he must comply with instructions issued by that person, as required by Cal. Code Regs. tit. 15, § 3041(d). Nor does petitioner claim to have been unaware that he was not allowed to misuse state property. *See Id.*, § 3323(h)(4) (prohibiting misuse of state property).[3] A person of ordinary intelligence would have understood that creating unauthorized documents on a work computer was a violation of regulations. Petitioner could reasonably assume that he was not permitted to go beyond the specific authorization given him by his supervisor. *Cf. Newell v. Sauser*, 79 F.3d

---

[3]   When petitioner signed his job description form he acknowledged that he was required to comply with the California Code of Regulations and that failure to do so would result in progressive discipline. ECF No. 1 at 16.

115 (9th Cir. 1996) (prison regulations proscribing possession of unauthorized material unduly vague as applied to petitioner because it did not give him notice that possession of legal documents he had created for another inmate were forbidden); *Rios v. Lane*, 812 F.2d 1032, 1038 (7th Cir. 1987) (prison regulation prohibiting gang activities unduly vague as applied to petitioner where, aside from the sparse text of the rule, "no material whatsoever was available to Rios describing what conduct was prohibited by the Rule"); *Adams v. Gunnell*, 729 F.2d 362 (5th Cir. 1984) (conviction for "disruptive conduct" unduly vague as applied to petitioner because "the record reveals absolutely no circumstance that might have given [plaintiffs] reason to suspect that writing, signing, or even circulating a petition among the inmates at Texarkana would subject them to punishment.").  Under the circumstances of this case, the regulation was not unduly vague as applied to petitioner.

Petitioner asserts that his supervisor gave him permission to create the documents confiscated from his computer, and he contends that this resulted in a lack of notice that his conduct was prohibited.  However, petitioner's claim in this regard misses the point.  Whether petitioner's actions went beyond the instructions given by his supervisor does not involve an issue of "notice" but was, rather, a question to be decided by the trier of fact at the disciplinary hearing. Petitioner raised a defense based on this argument and attempted to support it with the testimony of witnesses, but it was rejected by the SHO.  The SHO, as factfinder, was free to disbelieve petitioner's testimony and to credit instead the evidence introduced against him at the hearing.

For the foregoing reasons, petitioner has failed to demonstrate that he lacked notice of the charges against him or that the prison regulation he was charged with violating was unduly vague.

### 4.   Retaliation

Petitioner also claims that the disciplinary charges against him were filed in retaliation for his grievance against Captain Kaplan.

Prisoners have a First Amendment right to be free from retaliation for participating in "protected speech activities."  *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir.1995). Prisoners' constitutional right to access to the courts "extends to established prison grievance procedures."  *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by*

15

1    *Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001).   Because petitioner has a right to file inmate

2    appeals, prison authorities cannot penalize him for exercising that right.  *Id.*  However, in order to

3    prevail on a claim of retaliation, petitioner must demonstrate that that "the prison authorities'

4    retaliatory action did not advance legitimate goals of the correctional institution or was not

5    tailored narrowly enough to achieve such goals." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.

6    1985).

7            In this case, the alleged retaliatory action (bringing a disciplinary action against petitioner)

8    advanced the legitimate penological goal of prosecuting unauthorized use of prison computers by

9    employee inmates.  Further, the disciplinary charge against petitioner was tailored narrowly

10   enough to achieve that goal.  Petitioner's bare statement that prison officials were retaliating

11   against him for filing the prison grievance against Captain Kaplan is not enough to satisfy his

12   burden on a retaliation claim.  *Id. See also Pratt*, 65 F.3d at 808.  Petitioner has also failed to

13   demonstrate that "'but for' the retaliatory motive, the incidents to which he refers, including the

14   disciplinary action, would not have taken place.'"  *Smith v. Maschner*, 899 F.2d 940, 947 (10th

15   Cir. 1990)).  Accordingly, petitioner is not entitled to relief on a claim that disciplinary charges

16   were filed against him in retaliation for filing a grievance against Captain Kaplan.

17           Regardless of the motive in charging petitioner with a disciplinary violation, he was found

18   guilty by an unbiased decisionmaker of having unauthorized documents on his computer.  As

19   explained above, petitioner has not demonstrated that his constitutional rights were violated in the

20   prosecution of his disciplinary conviction.  It is not the duty of this court to act as the hearing

21   officer and re-determine the nature of petitioner's offenses and punishment.  *See Hill*, 472 U.S. at

22   455.  Prison administrators are "accorded wide-ranging deference in the adoption and execution

23   of policies and practices that in their judgment are needed to preserve internal order and discipline

24   and to maintain institutional security."  *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979).  "Such

25   considerations are peculiarly within the province and professional expertise of corrections

26   officials, and, in the absence of substantial evidence in the record to indicate that the officials

27   have exaggerated their response to these considerations, courts should ordinarily defer to their

28   /////

1   expert judgment in such matters." *Pell v. Procunier*, 417 U.S. 817, 827 (1974).  Deference is

2   appropriate here.  Therefore, the decisions of the disciplinary hearing officer must stand.

3   **III. Conclusion**

4        For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

5   application for a writ of habeas corpus be denied.

6        These findings and recommendations are submitted to the United States District Judge

7   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

8   after being served with these findings and recommendations, any party may file written

9   objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11  shall be served and filed within fourteen days after service of the objections.  Failure to file

12  objections within the specified time may waive the right to appeal the District Court's order.

13  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

14  1991).  In his objections petitioner may address whether a certificate of appealability should issue

15  in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

16  Section 2254 Cases in the United States District Courts (the district court must issue or deny a

17  certificate of appealability when it enters a final order adverse to the applicant).

18  DATED:  August 5, 2013.

19

20                                          EDMUND F. BRENNAN

21                                          UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

17